IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-0761-WJM-MJW

MICHAEL OLIVERO and
ANGELA OLIVERO,

    Plaintiffs,

v.

TREK BICYCLE CORPORATION, a Wisconsin Company,

    Defendant.

## ORDER DENYING PLAINTIFF'S RULE 702 MOTION

    This lawsuit arose from a bicycle accident that caused significant injuries to Plaintiff Michael Olivero. According to Olivero, the fork on the front of his bicycle spontaneously and catastrophically failed due to what must have been, he believes, a manufacturing defect. He and his wife, Plaintiff Angela Olivero (together, the "Oliveros"),[1] sue Defendant Trek Bicycle Corporation ("Trek") on theories of product liability, negligence, breach of warranty, and (as to Angela Olivero) loss of consortium.

    Currently before the Court is the Oliveros' Rule 702 Motion to Exclude the Opinions of Trek's Expert, Gerald P. Bretting ("Rule 702 Motion"). (ECF No. 90.) Bretting opines that Olivero's accident was not caused by a manufacturing defect, but by a foreign object lodging in Olivero's spokes which suddenly stopped his front wheel from rotating. (*See* ECF No. 90-1 at 4–6.) Bretting further opines that this sudden stoppage caused Olivero and the rear portion of his bike to pitch forward, putting

---

[1] Any reference in this order solely to "Olivero" refers to Michael Olivero.

enormous pressure on the fork and causing it to snap. (*Id.*) But, he says, Olivero would have pitched forward off his bike whether or not the fork failed (*id.*), thus absolving Trek from liability—assuming a jury accepts his opinion.

Since reading Bretting's expert report, the Oliveros have been nearly histrionic in their attempts to discredit and exclude it. (*See, e.g.*, ECF No. 77 at 8 (describing Bretting's foreign object theory as "about as expected and fanciful as Mr. Olivero being somehow stricken by unseen lightning descending from the heavens!").) The Rule 702 Motion is their latest effort in this regard, and it provides an interesting preview of how they might cross-examine Bretting at trial. But, for the reasons explained below, they have not demonstrated that Bretting's expected testimony is inadmissible under Rule 702. Their motion will therefore be denied.

## I. LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

An expert's proposed testimony also must be shown to be relevant and otherwise admissible. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advanc[e] a material aspect of the case" and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alterations in original).

While an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

The trial court's focus under Rule 702 is on the methodology employed by an expert, not on his or her conclusions. *Bitler*, 400 F.3d at 1233. Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)).

## II. ANALYSIS

Through motions related to summary judgment practice, the Court has already become familiar with the parties' expert reports. *See Olivero v. Trek Bicycle Corp.*, 291

F. Supp. 3d 1209, 1212–16, 1224–25 (D. Colo. 2017) (ECF No. 84). In particular, the Court has already thoroughly summarized Bretting's opinion. *Id.* at 1213–14. The Court need not repeat that summary here, but simply emphasizes the basic contours of Bretting's report. Bretting, as a rebuttal expert, largely attacks the conclusions of the Oliveros' expert, Braden Kappius, whose report rather generically states that there is no evidence of a foreign object or impact to the fork legs, and that "all signs point toward spontaneous and catastrophic failure of the fork that can only be attributed to underlying defects." *Id.* at 1213. Bretting counters with evidence he believes is consistent with a foreign object becoming lodged in Olivero's spokes, causing the pitch-over, fork failure, and injury.

The Court previously held that paragraph 3 of Bretting's opinions—a millisecond-by-millisecond reconstruction of how he believes the accident played out (*see* ECF No. 90-1 at 4–5)—was excludable because it was in substance an affirmative opinion that should have been disclosed in an affirmative expert report, rather than a rebuttal report. *Id.* at 1216. The Court gave the Oliveros an election "between exclusion [of paragraph 3] or obtaining a rebuttal to Bretting's paragraph 3." *Id.* The Oliveros elected exclusion. (*See* ECF No. 85.)

The Oliveros now argue that all of Bretting's remaining opinions run afoul of Rule 702, for various reasons. The Court will address those reasons in turn.

A.  **Failure to Perform Scientific Testing**

The Oliveros' first argument is a rather elaborate attack on Bretting's choice to inspect the failed fork only visually, and not also through scientific testing:

> Mr. Bretting has never performed an FEA (Finite Element Analysis) on any carbon fiber fork or any carbon fiber fork

4

> failure. Similarly, he performed no chemical analysis, no
> x-rays, no testing other than a visual inspection, and no
> microscopic examination of the fracture. In terms of both the
> fracture analysis and the accident reconstruction,
> microscopic examination of the fracture would show whether
> the front fork legs were in compression or tension at the time
> of the fracture. Carbon composite will fail in compression
> before tension. Under normal riding conditions, the front fork
> is in compression. . . . In fact, this is critical to determine
> whether the front fork fractured forwards or backwards
> because a forward fracture would indicate a normal weight
> distribution from the rider under normal riding conditions and
> a backwards fracture might be consistent with a pitch-over
> where the forces translate rearward during the somersault.
> Plaintiffs herein make a proffer that [their expert]
> Mr. Kappius, an expert in carbon fiber failure analysis, would
> testify that the fore surface of the front fork was in
> compression and the aft surface was in tension such that the
> fracture took place in a forward motion consistent with
> normal riding conditions and weight distribution.

(ECF No. 90 at 8–9.) Thus, the Oliveros say, Bretting "lacks . . . a reliable methodology or application of any methodology to [support his] opinions." (*Id.* at 10.) This argument fails for at least two reasons.

First, the argument relies on this new proffer from Kappius regarding compression and tension. Considering that discovery has long since closed and trial begins on July 30, 2018, this amounts to an egregiously tardy supplemental expert disclosure. The Oliveros have not attempted to justify this disclosure under Federal Rule of Civil Procedure 37(c)(1)'s "substantially justified or . . . harmless" standard. Accordingly, Kappius's proffer is inadmissible.

Second, even if the Court found Kappius's proffer admissible, it would still not establish that Bretting's expert methodology was fatally unreliable because Kappius is now speaking out of both sides of his mouth. In summary judgment proceedings, Kappius affirmatively represented that he had performed no scientific testing for latent

5

defects because the Oliveros did not ask him to do so, and it would not have been helpful anyway:

> [G]iven the nature of carbon fiber failure, and the fracture in this case, which can often obliterate the actual defect involved, any such testing would not necessarily be conclusive or determinative of the existence or non-existence of such a manufacturing defect, with the likelihood of revealing the source of the failure being substantially less than 100%.

*Olivero*, 291 F. Supp. 3d at 1225 (quoting ECF No. 49-22 ¶ 13). Now Kappius believes that scientific testing *is* required, at least as to Bretting's theory. If Kappius himself cannot decide the value of scientific testing, the Court certainly cannot hold that Bretting lacks a reliable methodology because he did not employ scientific testing.

**B.     "Reasoning to the Best Inference"**

The Oliveros next invoke the Tenth Circuit's *Bitler* decision, arguing that Bretting's report does not live up to *Bitler*'s requirements. (ECF No. 90 at 10–12.) *Bitler* involved a basement explosion traced to a propane safety valve that, in the plaintiffs' experts' opinion, malfunctioned due to accumulation of copper sulfide. 400 F.3d at 1231. The experts reached this conclusion through a process of elimination that the Tenth Circuit dubbed "reasoning to the best inference." *Id.* at 1237. In reviewing the defendants' challenge to the district court's decision to admit these experts' opinions, the Tenth Circuit announced a somewhat arid gloss on Rule 702 as applied to opinions based on process of elimination. The Tenth Circuit's (apparent) requirements for such opinions are as follows:

- "Experts must provide objective reasons for eliminating alternative causes . . . ."

6

- "[T]he inference to the best explanation must first be in the range of possible causes; there must be some independent evidence that the cause identified is of the type that could have been the cause."

- "[A]n inference to the best explanation for the cause of an accident must eliminate other possible sources as highly improbable, and must demonstrate that the cause identified is highly probable."

- "[B]ut this is not to say that an expert, in order to testify on causation, must be able to categorically exclude each and every possible alternative cause . . . ."

*Id.* at 1237–38 & n.6 (internal quotation marks omitted; certain alterations incorporated).

Applying the foregoing, one must keep in mind that (1) Bretting was a rebuttal expert, and (2) the opinion he was retained to rebut (*i.e.*, Kappius's opinion) can fairly be summarized as follows: "I didn't see any evidence of a foreign object, prior damage, or abnormal forces, so it must have been a manufacturing defect." *Cf. Olivero*, 291 F. Supp. 3d at 1213 (extensively quoting Kappius's report). In other words, Bretting's set out to show why *Kappius's* process of elimination was faulty. In doing so, he opined that one theory Kappius ruled out—a foreign object—was the likely culprit. Thus, it is not obvious to the Court that *Bitler* applies. To the contrary, *Bitler* seems like the sort of case that Trek would invoke against Kappius's opinions, as supported by Bretting's expert report which supposedly shows that Kappius failed to eliminate other possible sources with sufficient certainty.[2]

---

[2] To be clear, the Court is not inviting such a motion. The Court has now read Kappius's and Bretting's respective reports multiple times and finds that both present plausible theories, with competing strengths and weaknesses. It must be left to a jury to decide which theory is

7

Regardless, Bretting's rebuttal opinions satisfy the *Bitler* standards. Concerning the need for objective evidence eliminating alternative causes, Bretting primarily points to (1) the amount of pressure needed to break a carbon fiber fork, which supposedly could not have been present under the circumstances; and (2) the lack of damage to certain components that should have struck the ground first if the fork had failed spontaneously. (ECF No. 90-1 at 5, ¶¶ 7–10.) Regarding a need for evidence that a foreign object can cause this sort of pitch-over accident, the mechanics are obvious—no additional scientific confirmation is needed.

*Bitler*'s assertion that an expert "must eliminate other possible sources as highly improbable, and must demonstrate that the cause identified is highly probable," 400 F.3d at 1238, gives the Court more pause, because the Court is frankly uncertain what the Tenth Circuit intends by this requirement. Must the expert convince *the Court* of these high probabilities and improbabilities, or must the expert present only a reliably supported opinion as to these matters, leaving it to the jury to decide whether to credit that opinion? The Court concludes that the latter possibility is the better interpretation. The former possibility would essentially dictate that, in a process-of-elimination case, only one side gets to put on its expert—the side that convinces the Court of the relevant probabilities and improbabilities. The Court doubts that the Tenth Circuit intended as much. The Court therefore views this portion of *Bitler* as requiring only that the expert present a reliably supported opinion showing the improbability of other potential causes and the probability of the identified cause.

For the reasons already stated, Bretting's report meets this standard. Bretting

---

more persuasive.

has identified objective reasons for doubting that the fork failed spontaneously. Furthermore, Bretting's examination revealed what he believed to be an impact crack from the supposed foreign object. A jury may or may not agree with Bretting's opinions, but they are not so unreliable as to be unhelpful to the jury and therefore inadmissible.

**C.     Lack of Verified Testing Methods**

The Oliveros next argue that Bretting's opinion lacks necessary support through research regarding the difference between spontaneous failure and pitch-over events:

> Unlike motor vehicle accident reconstruction, there is a paucity of generally accepted literature, testing, or other foundations for bicycle accident reconstruction. Most importantly, there is no literature, testing, or other scientific foundation for differentiating an accident caused by a catastrophic failure of a front bicycle fork from an accident caused by some foreign object/pitch[-]over event.
> Mr. Bretting certainly refers to none. . . . Therefore, he can point to no accidents, testing or literature that describes and differentiates an accident caused by a failed front fork from some distinctive features seen only in foreign object/pitch-over reconstruction. Finding that some damage or finding is "consistent with" his theory hardly rules out an alternative explanation. Without comparative data to distinguish the two scenarios and identify unique objective factors or damage that differentiates the two scenarios, there is no objective basis to challenge either his methodology or the conclusions reached.

(ECF No. 90 at 13.)

To the extent the reference to "an alternative explanation" refers back to the Oliveros' *Bitler* argument, the Oliveros appear to be arguing for the sort of categorical exclusion that *Bitler* says is not required. *See* 400 F.3d at 1238 n.6. Beyond that, the Oliveros argument insists on far more than Rule 702 actually demands. Based on his knowledge of the ways in which a bicycle can fail, structurally speaking, Bretting has presented a plausible—although assailable—theory of why the evidence is more

9

consistent with a pitch-over caused by a foreign object as compared to spontaneous failure. There is no Rule 702 requirement that he back up his opinion with pre-existing research. To be sure, the existence of such research, testing standards, and so forth is a factor the Court may consider in judging admissibility of expert testimony. *See Daubert*, 509 U.S. at 593–94 (listing various factors a Court may consider in the "flexible" Rule 702 inquiry). But their absence in this case, without more, does not convince the Court that Bretting's analysis is unreliable.

**D.    Lack of Qualifications**

Throughout the Oliveros' Rule 702 Motion, they scatter references to Bretting's lack of qualifications. (*See, e.g.*, ECF No. 90 at 5, 6, 10.) They do not argue, however, that Bretting lacks the qualifications to be an expert in the field he claims as his expertise, *i.e.*, bicycle accident reconstruction. Rather, they seem to be arguing that he is not qualified to testify that spontaneous failure was *not* the cause of the accident because he has not performed the proper testing, there is no research to support his theory, etc. In short, the Oliveros' attack on Bretting's qualifications just another way of asserting all of the Oliveros' previously discussed arguments. It is not a true challenge to Bretting's qualifications, and as such is rejected.

**E.    The Oliveros' "Commonsense Hypothetical Reconstruction"**

At the end of their Rule 702 Motion, the Oliveros offer

> a commonsense hypothetical reconstruction . . . which is consistent with the physical evidence and largely debunks Mr. Bretting's "conclusive" evidence and opinions to the contrary: (1) the right front fork blade fractured due to a manufacturing defect; (2) due to the fracture, the front wheel would tip slightly to the right due to the uneven support

10

> (Opinion 9)[3]; (3) the left fork blade would then almost instantaneously fracture from overloading as the sole support; (4) the jagged proximal left fork blade would collapse into and impale the rotating front wheel[;] (5) the impact of the left fork blade would cause the spoke to break, the valve stem to bend, and the aft surface of the left fork blade would show some impact damage from the rotating wheel (Opinions 1a; 2); (6) as the fork blade became entangled in the front wheel, it would trip [*sic*] the wheel rearward into the right lower surface of the down tube causing scuff marks and damage to the cable (Opinions 2 and 9 . . .); (7) the entangled wheel impacting the right underside of the down tube would trip [*sic*] the frame of the vehicle to the right side without causing damage to the more distal chain rings, crank arms, and chain (Opinions 9 and 10); (8) the overloading of one fork blade and the other accident dynamics would cause some markings to the specially designed crown's "crumple zone"—where, per the performance specifications, the failure mode is supposed to take place and not in the carbon fiber components of the fork (Opinion 8); (9) the irregular fracture with splintering of the composite is also "consistent with" a defective fork (Opinion 6); and (10) as a result of the collapsing bicycle into the wheel, and the resulting rightsided tip-over, Mr. Olivero was hurled face-forward into the pavement causing his right-sided facial and head injuries with minimal damage to his helmet.

(ECF No. 90 at 14–15.)

If the Oliveros wish to use this scenario as a basis for cross-examining Bretting, the Court generally sees no problem—although the Court will not prejudge any objection Trek might make to a particular cross-examination question. Nonetheless, the Court will not permit the Oliveros to present this scenario through one of their own witnesses or through attorney argument. It is not a mere "commonsense hypothetical reconstruction" (a euphemism for "something we think requires no expert disclosures"). Although a few discrete items may be common sense (*e.g.*, items 2–4, assuming item 1

---

[3] Referring to paragraph 9 of the "Opinions" section of Bretting's report (ECF No. 90-1 at 4–6).

11

is true), most of this theory relies on matters outside the normal experience of a jury. Thus, it is something the Oliveros were required to disclose in discovery. They did not do so and, again, make no argument that this late disclosure is substantially justified or harmless under Rule 37(c)(1).

### III. CONCLUSION

For the reasons set forth above, the Oliveros' Rule 702 Motion (ECF No. 90) is DENIED.

Dated this 25th day of June, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge